## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| AMERICAN FIRE & INDEMNITY COMPANY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO: |
| v. | ) | |
| | ) | CV-04-PWG-2646-M |
| MICHAEL HALL, HAROLD LANDS and KATHY LANDS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## MEMORANDUM OF OPINION

American Fire & Casualty Company, hereinafter referred to as "American," filed this declaratory judgment action against Michael Hall, Harold Lands, and Kathy Lands, hereinafter referred to as "Hall," pursuant to 28 U.S.C. § 2201. American asks this court to determine whether American has a duty to defend, indemnify or pay any judgment under a commercial general liability insurance policy issued to Hall. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 72.3. This matter is before the Court for consideration of American's Motion for Summary Judgment (Doc. #19).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish a prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due

to prevail as a matter of law.  *See Clark v. Coats &Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once

that initial burden has been satisfied, however, the non-moving party may not merely rest upon his

pleading, but must come forward with evidence supporting each essential element of his claim.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);

*Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate

burden of proving his action, is able to show some evidence with respect to each element of his

claim, all other issue of fact become immaterial and the moving party is entitled to judgment as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530

(11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to
> establish a prima facie case.  "In such a situation, there can be 'no genuine
> issue as to any material fact,' since a complete failure of proof concerning an
> essential element of the non-moving party's case necessarily renders all other
> facts immaterial." [Citation omitted].  Thus, under such circumstances, the
> public official is entitled to judgment as a matter of law, because the plaintiff
> has failed to carry the burden of proof.  This rule facilitates the dismissal of
> factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

The following relevant facts are undisputed or, if disputed, viewed in the light most

favorable to plaintiff, the nonmoving party.

## FACTUAL BACKGROUND

In 1996, Hall, his wife, his brother, and his brother's wife, developed Oak Grove Meadows

("Oak Grove"),a mobile home park located at County Road 108 in Rainsville, Alabama.  (Hall Depo.

pp. 16-18).  Hall is a managing owner of Oak Grove.  (Hall Depo., p.26-27).  On November 16,

1998, Hall d/b/a Oak Grove Meadows submitted a signed Commercial Insurance Application to his

2

independent insurance agent, Sallie Newsome.  (Doc. #19, Exhibit "C").  The application listed the specific premises for insurance coverage as the lots at the mobile home park, a house located at the mobile home site, and an office on the same grounds.  (Doc. #19, Exhibit "C").   The nature of the insured business is described as "Mobile Home Park – 39 lots." (Doc. #19, Exhibit "C").  From December 2, 1999 through December 2, 2000, Hall d/b/a Oak Grove was a named insured under a Commercial General Liability Insurance Policy with American Fire.  (Doc. #19, Exhibit "D").  The policy listed Oak Grove's address as 58 Road 9038, Rainsville, Alabama, the office address for the mobile home park.   (Doc. #19, Exhibit "D" and Hall depo., pp. 59-61.)  The business description stated in the policy is  "Mobile Home Park."  (Doc. #19, Exhibit "D").   The premises listed on the Declarations Page of the policy were the physical address of Oak Grove Meadow's office, the mobile home park, 108 Oak Grove Road, a rental house and duplexes. (Hall Depo. pp. 58-62; Doc. #19, Exhibit "D").  During the 1999-2000 coverage period, Hall was in the process of building a new house to be used as his personal residence at County Road 514 in Rainsville, Alabama.  The house was under construction by Hall Construction, a sole proprietorship of Hall.  (Hall Depo. p.32, 34).  Hall Construction was a separate business entity from Oak Grove.  (Hall Depo. p. 63).

Hall d/b/a Oak Grove Meadows maintained a commercial rental account with Rental Service Corporation ("RSC") where he rented equipment for use at Oak Grove.  (Hall Depo. pp.55-56).  Hall paid for these rentals through a business account for Oak Grove maintained at either Horizon Bank or Bank of Powell.  (Hall Depo. pp. 29-30).  On November 13, 2000, Hall rented a lull (a type of lift used to reach upper floors of multi-storied buildings) over the telephone, using his business rental account with RSC.  (Doc. # 19, Exhibit "E," Rental Agreement;  Hall depo., p. 51, 55-56).  It is undisputed that lull was rented solely for use at the personal residence being built by Hall

3

Construction.  (Hall Depo. pp.55-56, 72-73).    The rental agreement for the lull contained an indemnification clause. (Doc. # 19, Exhibit "E").

    While building his home, Hall employed the services of Harold Gene Lands to do carpentry work, framing, and install vinyl siding.  (Hall Depo. p. 41).  Lands was paid from a business account for Hall Construction maintained at Horizon Bank.  (Hall Depo. pp. 42-43).  On November 30, 2000, Lands fell and was injured while using the lull to apply vinyl siding to the home.  (Hall Depo. p. 41, 43-44; Doc. # 19, Exhibit "B," Complaint filed in the Circuit Court of DeKalb County, styled *Harold Gene Lands & Kathy Lands v. Rental Services Corporation, Michael Hall, et al.*, CV 02-433).

    Lands filed a lawsuit in state court containing a products liability claim against RSC and a personal injury claim based on  premises liability against Hall.  (Doc. # 19, Exhibit "B," Complaint filed in the Circuit Court of DeKalb County, styled *Harold Gene Lands & Kathy Lands vs. Rental Services Corporation, Michael Hall, et al.*, CV 02-433).  American received notice of Lands's lawsuit by way of an ACORD form from Insurance Associates on January 6, 2003.  By letter dated February 14, 2003, American notified Hall that they would defend him under a Reservation of Rights.  (Doc. # 19, Exhibit "G").   The letter stated  in pertinent part:

> Please be advised that we are defending, investigating and handling this case under a Reservation of Rights.  Neither our defense of this case, investigation, negotiating a compromise settlement nor anything else we [sic] may do, or fail to do in the past or in the future should be considered as a waiver or estoppel preventing us from raising any defenses to coverage under our policy.
>
> We are reserving all of our rights under the policy, including the right to deny coverage, withdraw from the defense of the suit and file a Declaratory Judgment Action or Motion to Intervene at any time in the future.

4

**…..**

> This policy does not provide coverage for bodily injury to
> your employee that arises from his employment.
>
> Should you be aware of any facts you feel we are not taking
> into consideration or think we have misinterpreted this policy,
> let us know immediately so we can re-evaluate our position.
> We reserve our right to amend this Reservation of Rights
> letter in the future.   Likewise, should facts develop or
> additional allegations arise that you feel would warrant a
> reconsideration of our Reservation of Rights, let us know
> immediately.

(Doc. # 19, Exhibit "G").  Nothing in the record indicates that Hall responded to the reservation of

rights letter.

   On September 2, 2004, American filed a Complaint for Declaratory Judgment against Hall

seeking an order determining "what, if any, duties American has to defend, indemnify or pay any

judgment under the subject liability insurance policy which may be rendered against Mike Hall as

a result of the allegations in the Lands' lawsuit."  (Doc. #1, Complaint for Declaratory Judgment,

p. 3).  As a basis for the Complaint, American asserted:

> 8.    The causes of action and damages alleged by the Lands are
> not covered under the terms of the policy issued by American.
> Furthermore, there are specific exclusions, including, but not
> limited to the "Limitation of Coverage to Designated
> Premises or Project," and the "Employers Liability exclusion
> found in Section 2(e) of the policy, which are applicable to
> the claims and types of damages alleged by the Lands and
> which preclude coverage for those types of claims and
> damages.

(Doc. #1, Complaint for Declaratory Judgment, p. 2).

   On July 7, 2005, RSC  filed a cross-claim against Hall d/b/a Oak Grove asserting that,  under

the terms of an indemnity provision in the rental agreement, Hall is obligated to "indemnify, hold

harmless and defend" RSC in the lawsuit filed by Lands.  (Doc. # 19, Exhibit "H," RSC's Cross-claim against  Hall, d/b/a Oak Grove).

<u>DISCUSSION</u>

Under Alabama law, insurers may limit liability by writing policies with a narrow range of coverage.  *Altiere v. Blue Cross-Blue Shield of Alabama*, 551 So.2d 290, 292 (Ala. 1989). In the absence of ambiguity in the insurance contract, the contract must be enforced as written.  Courts may not defeat the express provisions of a policy including exclusions from coverage by making a new contract for the parties.  *Id*.

American contends that coverage was available with respect to the personal injury claim based on the "Limitation of Coverage to Designated Premises or Project Endorsement."  Hall has expressly conceded that he is not entitled to coverage on the personal injury claim (Doc. #27, Hall's response to motion for summary judgment, p. 2).  Because the coverage issue for the personal injury claim was addressed by American in its motion for summary judgment and was not addressed by Hall in his response, he has abandoned the coverage issue related to Lands' personal injury claim. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000).

Hall argues, however, that the cross-claim filed by RSC triggered coverage under the American policy.  (Hall's response to motion for summary judgment, p. 2).  He argues that while there is an exclusion for assumption of liability in a contract, the contractual indemnity agreement is an "insured contract" for which there is coverage under the policy issued to Hall d/b/a Oak Grove. (Response to motion for summary judgment, p. 3).  The policy defines "insured contract" as:

> That part of any other contract or agreement pertaining to your
> business ... under which you assume the tort liability of another party
> to pay for "bodily injury" or "property damage" to a third person or
> organization.  Tort liability means a liability that would be imposed
> by law in the absence of any contract or agreement.

(Doc. #19, Exhibit "D," Commercial General Liability Coverage Policy).  Hall argues:

> Hall maintained his account with Rental Services as part of his Oak
> Grove Meadows business.  Clearly, Hall's account with Rental
> Services, from which the rental agreement at issue evolved, pertained
> to his Oak Grove business.  Therefore, Hall's indemnity agreement
> with Rental Services meets the definition of an "insured contract" for
> which the American Fire policy provides coverage.

(Response to motion for summary judgment, pp. 3-4).

The definition of "insured contract" is explicitly limited to "that part of any other contract or agreement **pertaining to your business** ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."   The business of the insured under the American policy was a mobile home park and related rental property.  Hall does not argue that the account that  Hall d/b/a Oak Grove had with RSC was an "insured contract."  While the account may have related to Oak Grove business, the contract or agreement which included the indemnity clause, that is the rental agreement itself, did not pertain to Oak Grove business.  The lull was not intended to be used at Oak Grove in fact and was not used at Oak Grove.  Hall's argument that he was able to rent the lull from RSC only because of his commercial account through Oak Grove is not supported by the record.  There is no evidence that Hall was prevented from opening an account for Hall Construction and renting the lull through that account nor ever from renting the equipment personally.

7

Hall argues that because American failed to raise the issue of timely notice in its reservation of rights letter to Hall dated February 14, 2003, it may not do so now.  (Doc. # 19, Exhibit "G;" Doc. # 27, Defendant's Response to Plaintiff Motion for Summary Judgment, p. 4).  In *Home Indemnity Co. v. Reed Equipment Co., Inc.*, 381 So. 2d 45, 50-51 (Ala. 1980), the Alabama Supreme Court stated:

> Where an insurer specifically disclaims liability because of one ground of forfeiture, it waives all other grounds of forfeiture which might have been stated but were not....  Similarly, an insurer who disclaims liability solely on a theory of noncoverage thereby waives his defenses with respect to any grounds of forfeiture which might have been raised....
>
> Although the doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture, the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. ...  Thus, coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written....  Here, the policy provision in question pertains to coverage rather than forfeiture. It follows that it could not have been waived by Appellant; and, if the provision is without ambiguity, it is due to be given effect.

[citations omitted].  Because there is no coverage under the "insured contract" provision,  whether there was a waiver of the defense of timely notice is not an issue.

Hall argues that under an enhanced obligation of good faith, American is estopped from withdrawing its defense of Hall on RSC's cross-claim because the reservation of rights letter failed to apprise Hall of the specific policy provision on which American now relies to deny coverage. (Doc. # 27, Defendant Response to Plaintiff Motion for Summary Judgment, p. 5).   In *L & S Roofing Suply Company, Inc. v. St. Paul Fire & Marine Insurance Company*, 521 So.2d 1298, 1303

8

(Ala. 1988), the Alabama Supreme Court recognized that an insurer defending under a reservation

of rights does so under an "enhanced obligation of good faith" and must meet certain criteria:

> *First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries.* Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. *Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit.* Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*See also, Shelby Steel Fabricators, Inc. v. U.S.S. & G.*, 569 So. 2d 309, 312 (Ala. 1990).

Hall  argues that American did not meet the third criteria:

> At no time did American Fire notify Hall of developments relating to the coverage issues it now raises in this declaratory judgment action. ... In fact, American Fire deliberately chose not to inform Hall of its intention to deny coverage based upon policy provisions different from those cited in its reservation of rights letter sent to Hall.

American sent Hall only a single reservation of rights letter, and that letter stated only that the policy

did not provide coverage for bodily injury to an employee arising from his employment.  Exhibit G.

When the reservations of rights letter was written, the complaint and ACORD form both indicated

that Lands was an employee of Hall.  (Exhibit B; Exhibit 1 to Exhibit F).   According to the cross-

claim filed by RSC, RSC requested indemnification from Hall on October 13, 2003.   This

declaratory judgment action was filed on September 2, 2004.  The RSC cross-claim was not filed

until July 7, 2005.  The deposition of Patrick Challenger, a claims supervisor with United Fire

Group, was taken on July 26, 2005. (Challenger depo, p.6).  Challenger testified that the reservation

of rights letter noted that there was an exclusion in the policy for employees of the insured (Challenger depo., p. 14) and that "later" he determined there might be a coverage problem based on a policy endorsement that limited coverage to a particular location or project but that he did not write Hall another reservation of rights letter nor did he instruct anyone else to do so.   (Challenger depo., p. 15-16.23).  As a result of the "fire wall" that is established whenever there is a potential coverage issue, Challenger was not provided with notice that an indemnity claim had been made. (Challenger depo., pp. 33-34).  Challenger did, however, become aware of the July 7, 2005 cross-claim prior to his July 26, 2005 deposition. (Challenger depo., pp. 34-35).  As previously noted, Hall concedes that he is not entitled to coverage on the personal injury claim that was raised in the initial complaint but rather argues that he is entitled to coverage on RSC's cross-claim and that American cannot show that it acted under the enhanced obligation of good faith because did not inform Hall of its intention to deny coverage based upon policy provisions different from those cited in its reservation of rights letter.   There was no deposition testimony or other evidence indicating when (other than "later") Challenger determined that there might be a coverage problem because of the location endorsement.  In light of  Hall's concession that he is not entitled to coverage on the location endorsement, American no longer relies upon this particular ground to support its motion for declaratory judgment. American's position that the indemnity contract was not an "insured contract" could not have been anticipated until the cross-claim was filed.  The declaratory judgment action filed ten months prior to the cross claim.  Under these facts, American did not violate its enhanced obligation of good faith because it could not have known to inform Hall that he was not entitled to coverage under the "insured contract" clause until after the declaratory judgment action and the filing of the cross-claim.

10

Based on the foregoing, the Motion for Summary Judgment filed by American Fire & Indemnity Company (Doc. # 19) is due to be GRANTED.  The Motion to Strike (doc. #28) is MOOT.  A separate Final Judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 3rd day of May, 2006.

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE